IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

TAMMY R.,

     Plaintiff,

v.                                    CIVIL ACTION NO. 1:22-cv-00395

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

     Defendant.

**PROPOSED FINDINGS & RECOMMENDATION**

Plaintiff Tammy R. ("Claimant") seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f. (ECF No. 2.) By standing order entered on January 4, 2016, and filed in this case on September 16, 2022, this matter was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 4.) Presently pending before this Court are Claimant's Brief in Support of Her Motion for Judgment on the Pleadings (ECF No. 13), the Commissioner's Brief in Support of Defendant's Decision (ECF No. 16), and the Claimant's Reply (ECF No. 17).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Claimant's request to reverse the Commissioner's decision (ECF No. 16), **GRANT** the

Commissioner's request to affirm her decision (ECF No. 17), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

## I.    BACKGROUND

### A. Information about Claimant and Procedural History of Claim

Claimant was 50 years old at the time of her alleged disability onset date and 56 years old on the date of the decision by the Administrative Law Judge ("ALJ"). (Tr. 446.)[1] She has a college education, and her past relevant work consists of skilled, sedentary positions as a user support analyst and "sales representative, telephone services." (Tr. 152, 213, 224-26, 494.) Claimant alleges that she became disabled on December 30, 2015, due to seventeen medical conditions, including—relevant to the instant matter—depression and anxiety. (Tr. 446-452, 493.)

Claimant filed her application for benefits on April 25, 2019. (Tr. 134, 453.) Her claim was denied on May 5, 2020, and again upon reconsideration on October 6, 2020. (Tr. 134.) Thereafter, on November 18, 2020, Claimant filed a written request for hearing on November 18, 2020. (Tr. 377-78.) An administrative hearing was held telephonically before ALJ Thomas W. Erwin (the "ALJ" or "Judge Erwin") on December 1, 2021. (Tr. 208-231.) On December 14, 2021, Judge Erwin entered an unfavorable decision. (Tr. 134-154.) Claimant then sought review of the ALJ's decision by the Appeals Council; however, the Appeals Council denied Claimant's request for review on July 25, 2022, and the ALJ's decision became the final decision of the Commissioner on that date. (Tr. 1-6.)

Claimant timely brought the present action on September 15, 2022, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2.) The

---

[1] All references to "Tr." refer to the Transcript of Proceedings filed in this action at ECF No. 10.

Commissioner filed an Answer (ECF No. 9) and a transcript of the administrative proceedings (ECF No. 10). Claimant subsequently filed her Brief in Support of Complaint (ECF No. 13), and in response, the Commissioner filed his Brief in Support of Defendant's Decision (ECF No. 16). Claimant then filed a reply brief. (ECF No. 17.) As such, this matter is fully briefed and ready for resolution.

### B. *Relevant Medical Evidence*

The undersigned has considered all of the evidence of record, including documentation of medical examinations, treatment, evaluations, and statements. The information most relevant to Claimant's challenges[2] is summarized as follows, for the convenience of the United States District Judge.

### 1. *Treatment Records*

On October 17, 2011, Claimant presented to Florencio Neri, M.D., at Prime Care 12, Inc. (Tr. at 718). Claimant reported having severe depression over the past two months after she ran out of Cymbalta. *Id.* She was stressed by her brother's recent death. *Id.* Claimant reported fatigue, dizziness, and headaches; she believed the depression was causing her headaches. *Id.* Her current medications included the antidepressant Cymbalta. (Tr. at 720). Claimant's Cymbalta was refilled and she was advised to avoid caffeine, reduce stress, and follow up in three months. (Tr. at 721).

On January 9, 2012, Claimant followed up with Dr. Neri. She reported fatigue and seasonal allergies, but denied dizziness; headaches; weakness; depression; anxiety; or sleep disturbances. (Tr. at 722). It was noted that Claimant was divorced with two

---

[2] Plaintiff alleges error only with respect to the ALJ's findings regarding her mental impairments and limitations. (ECF No. 13 at 8 n.4.)

children, she enjoyed reading, and her primary form of exercise was walking. (Tr. at 723). No changes were made to Claimant's medication regimen. (Tr. at 724).

On January 24, 2012, Claimant reported to Dr. Neri that she had anxiety and depression. (Tr. at 726). Subsequently on September 19, 2012, Claimant saw Melissa Hurst, a physician's assistant. (Tr. at 846). Claimant denied fatigue, chest pain, dizziness, shortness of breath, anxiety, depression, or sleep disturbances. *Id*. She was in no apparent distress and had normal psychiatric examinations. *Id*.

On October 3, 2012, Claimant was noted to be in no apparent distress, and had normal neurologic and psychiatric examinations. On January 11, 2013, Claimant followed up with the physician's assistant. (Tr. at 857). She reported a moderate degree of depression. Claimant was found to be in no apparent distress, with normal psychiatric examinations. *Id*.

On October 9, 2015, Claimant had a clinical evaluation at Southern Highlands Community Mental Health Center. Claimant reported that she battled with depression all of her life and her primary physician wanted her to come in for an evaluation, but she kept putting "it off." (Tr. at 1351). Claimant was taking Cymbalta, which helped. *Id*. The diagnoses were moderate major depressive disorder and generalized anxiety disorder. (Tr. at 1353). A psychiatric evaluation was recommended to evaluate pharmacological treatment. (Tr. at 1354).

Significant records of relevant treatment do not reappear until 2018, when Claimant reported mental-health symptoms to her primary-care physician, Jana Peters, D.O. (Tr. 883). On December 18, 2018, Dr. Peters noted that Claimant demonstrated an anxious mood and affect. *Id*.

From April 2019 through August 2021, Claimant appeared for routine follow ups with her primary care provider for physical conditions (e.g., hyperlipidemia, hypertension, diabetes, gastroesophageal reflux disease, and joint pain) (Tr. 834-38, 887-910, 943-47, 964-82, 1162-89). She also reported depression, but when she provided more details about her condition, she generally described it as mild and indicated that she was "doing well without significant affective symptoms" otherwise (Tr. 834, 887, 894, 943, 964, 971, 978, 1173-74, 1179, 1184.) However, she did report on one occasion that she was experiencing a moderate degree of depression although her depression screen at the medical appointment was negative. (Tr. 1162). She also mentioned anxiety at approximately two appointments (Tr. 971, 1179). Claimant's mental status examinations were normal with intact alertness and orientation, appropriate affect and demeanor, intact recent and remote memory, and good insight and judgment (Tr. 897, 946, 975, 1111, 1165). She took Cymbalta and Buspirone with good compliance (Tr. 834, 964, 969,1162). In December 2019, however, Claimant reported an anxious mood that was frequent and present most days. (Tr. 971).

Finally, in December 2020, Claimant initiated mental health treatment (Tr. 1110). She attended approximately two therapy sessions (Tr. 1109-11). She also attended periodic medication management appointments, where she reported depression and anxiety in the context of family stressors (i.e., her son moving out) and medical stressors (i.e., pancreatitis) (Tr. 1397, 1400). For instance, on December 28, 2020, Claimant reported increased stressors; a depressed and anxious mood; sleeping too much; and poor energy. (Tr. 1110-1111.) She also described having poor interest in things and reported that she could not recall the last time she took a bath. *Id*. A mental status examination revealed a dysphoric affect. Tr. 1111. Her Cymbalta was

increased. *Id*. Claimant's mental status examinations were unremarkable except for her reported "depressed and anxious" mood (Tr. 1398, 1401, 1453). In particular, Claimant was alert, pleasant, and cooperative with normal speech, euthymic affect, linear, goal-directed thought processes, intact attention, memory, and fund of knowledge, and fair insight and judgment (Tr. 1398, 1401, 1453). Claimant reported improvement in her mood and energy level, as documented on examination, after Wellbutrin was added to her medication regimen. (Tr. 1449-50).

In January 2021, Claimant reported being sexually assaulted by her stepfather from ages four through twelve, as well as being molested by her uncle, grandfather, and neighbor. (Tr. 1107). Her provider noted that she presented with severe symptoms of anxiety. *Id*. In March 2021, Claimant reported persistent symptoms of depression, anxiety, and insomnia and having "a pretty rough time." (Tr. 1397). In June 2021 she reported her mood as being "up and down." (Tr. 1400.) Claimant reported that her depression had improved slightly with the increase in Cymbalta; however, her anxiety was variable. *Id*. A mental-status examination indicated a depressed and anxious mood. (Tr. 1401.) Similarly, a mental-status examination in September 2021 indicated a depressed and anxious mood; furthermore, Claimant reported that she slept and stayed home a lot, with no desire to go outside. (Tr. 1452-53.) She explained feeling that she wants to "crawl up in a hole and sleep my life away." *Id*.

### 2. *Opinion Evidence*

Frank Roman, Ed.D., and James Binder, M.D., reviewed the record related to Claimant's mental impairments in February and September 2020, respectively (Tr. 285-86, 335-36). Both state agency experts found that Claimant had mild limitations in understanding, remembering, or applying information, interacting with others,

6

maintaining concentration, persistence, or pace, and adapting and managing herself, and, therefore, Claimant's mental impairments were non-severe. (Tr. 285-86, 335-36).

### 3. *Claimant's Hearing Testimony*

At her hearing before the ALJ held on December 1, 2021, Claimant testified that she had memory issues, causing her to feel like she is "reach[ing] for words . . . it's there, but I can't get it." (Tr. 218.) She added that she has a degree in psychology but feels like she has forgotten "half of what [she] learned." *Id.* She also explained that while working at Ecosphere she had to know how to program to fix the customer's televisions, but could not remember how to program the remote. *Id.* She had panic attacks while working there. (Tr. 215.) On her "Function Report," completed in connection with her initial claim for benefits, she reported sometimes going days without bathing or changing clothes. (Tr. 524.) Her son organizes her pill container and reminds her to take her medication. *Id.* She has no interest in hobbies and activities she once enjoyed. (Tr. 526). She does not go anywhere on a regular basis. *Id.* Her conditions affect memory, completing tasks, concentration, and following instructions. (Tr. 527). She must read written instructions "over and over." *Id.* At times, she forgets parts of spoken instructions. *Id.* She does not handle stress well. (Tr. 528).

### 4. *Vocational Expert Hearing Testimony*

At the hearing, the ALJ employed a vocational expert ("VE") to aid him in determining whether Claimant could perform her past relevant work or other work. (Tr. 226-27.) The ALJ asked the vocational expert to consider an individual of Claimant's age, education, and work experience who could perform work classified as "sedentary," with the following limitations: only occasional balancing, stooping, kneeling, crouching, crawling, and climbing stairs; frequent reaching and occasional overhead reaching; frequent handling and fingering; no exposure to unprotected heights; occasional

exposure to temperature extremes, vibration, pulmonary irritants, and hazards; and moderate noise exposure. *Id.* The ALJ asked if such an individual would be able to perform Claimant's past relevant work (Tr. 226-27). In response, the vocational expert testified that Claimant could perform her past relevant composite job of a user support analyst and sales representative, telephone services (Tr. 227).

### C. Sequential Evaluation Process

An individual unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" is considered to be disabled and thus eligible for benefits. 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has established a five-step sequential evaluation process to aid in this determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). The ALJ proceeds through each step until making a finding of either "disabled" or "not disabled"; if no finding is made, the analysis advances to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 990 n.* (4th Cir. 1985); *see Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012) ("To establish eligibility for . . . benefits, a claimant must show that he became disabled before his [date last insured].").

At the first step in the sequential evaluation process, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the ALJ moves on to the second step.

At the second step, the ALJ considers the combined severity of the claimant's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ gleans this information from the available medical evidence. *See Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements will result in a finding of "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

Similarly, at the third step, the ALJ determines whether the claimant's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (quoting *Bowen v. City of New York*, 476 U.S. 467, 471 (1986)).

"If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity" ("RFC") before proceeding to the fourth step. *Mascio*, 780 F.3d at 635; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant's RFC reflects "her ability to perform work despite her limitations." *Patterson v. Comm'r*, 846 F.3d 656, 659 (4th Cir. 2017); *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (defining claimant's RFC as "the most the claimant can still do despite physical and mental limitations that affect his ability to work" (alterations and internal quotation marks omitted)); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ "first identif[ies] the individual's functional limitations or restrictions and assess[es] his or her

work-related abilities on a function-by-function basis," then "define[s] the claimant's RFC in terms of the exertional levels of work." *Lewis*, 858 F.3d at 862. "In determining a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments . . . including those not labeled severe" as well as "all the claimant's symptoms, including pain, and the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Monroe*, 826 F.3d at 179 (alterations and internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a), 416.945(a).

When the claimant alleges a mental impairment, the first three steps of the sequential evaluation process and the RFC assessment are conducted using a "special technique" to "evaluate the severity of [the] mental impairment[]." 20 C.F.R. §§ 404.1520a(a), 416.920a(a); *see Patterson*, 846 F.3d at 659. Considering the claimant's "pertinent symptoms, signs, and laboratory findings," the ALJ determines whether the claimant has "a medically determinable mental impairment(s)" and "rate[s] the degree of functional limitation resulting from the impairment(s)" according to certain criteria. 20 C.F.R. §§ 404.1520a(b), 416.920a(b); *see id*. §§ 404.1520a(c), 416.920a(c). "Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment." *Patterson*, 846 F.3d at 659; *see* 20 C.F.R. §§ 404.1520a(d), 416.920a(d). "If the mental impairment is severe but is not a listed impairment, the ALJ must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities." *Patterson*, 846 F.3d at 659.

After assessing the claimant's RFC, the ALJ at the fourth step determines whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R.

§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Monroe,* 826 F.3d at 180. If she does not, then "the ALJ proceeds to step five." *Lewis*, 858 F.3d at 862.

The fifth and final step requires the ALJ to consider the claimant's RFC, age, education, and work experience in order to determine whether she can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this point, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy.'" *Lewis*, 858 F.3d at 862 (quoting *Mascio*, 780 F.3d at 635). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Id.* (quoting *Mascio*, 780 F.3d at 635). If the claimant can perform other work, the ALJ will find her "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she cannot perform other work, the ALJ will find her "disabled." *Id.*

Applying the sequential evaluation process in this case, the ALJ concluded at step one that Claimant had not engaged in substantial gainful activity since the alleged onset of her disability. (Tr. 137.) At step two, the ALJ found that Claimant had several "severe" impairments; however, he found that Claimant's mental-health impairments were not severe. (Tr. 137-141.) However, he found that those impairments, or a combination thereof, failed to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 142-44.) Upon assessing Claimant's RFC, the ALJ determined that Claimant was able to perform sedentary work, with the following limitations: there can be no unprotected heights like ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, crawl, or climb. She can frequently reach in front and overhead reach occasionally. She can frequently handle and finger. She can

have  occasional exposure to extreme heat or cold, vibrations, pulmonary irritants, and other hazards. There can be no more than moderate noise exposure. (Tr. 144).

At the fourth step, relying on the expertise of a vocational expert, the ALJ found that with this RFC, Claimant was able to perform her past relevant composite job as a user support analyst and sales representative, telephone services (Tr. 152-53). Accordingly, the ALJ concluded that Claimant was not under a disability at any time from April 25, 2019, through the date of the ALJ's decision (Tr. 153).

## II.    LEGAL STANDARD

This Court has a narrow role in reviewing the Commissioner's final decision to deny benefits: it "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and it must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In other words, this Court "looks to [the] administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* (alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "In reviewing for substantial evidence, [this Court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Even if "reasonable minds [could] differ as to whether a claimant is disabled," this Court upholds the ALJ's decision if it is supported by substantial evidence. *Id.* (quoting *Craig*, 76 F.3d at 589).

### III.    ANALYSIS

Claimant raises a single allegation of error in this matter. (*See* ECF No. 13). She argues that the ALJ erred by omitting mental limitations, without explanation, from the RFC, and that as a result, the ALJ's lack of explanation regarding how he considered those limitations beyond step two prevents meaningful judicial review, thereby necessitating remand. *See id.* In response, the Commissioner argues that the ALJ was not required to include mild limitations in the RFC under the circumstances. (*See* ECF No. 16.) The undersigned agrees with the Commissioner.

Clearly, an ALJ must consider the combined effects of all the Claimant's medically-determinable impairments when determining Claimant's RFC—not just the "severe" impairments. *Id.* (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); Social Security Ruling ("SSR") 85-15, 1985 WL 56857.) Prior to determining a claimant's RFC, therefore, the ALJ must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (quoting *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015)). Pursuant to this standard, "remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636).

However, mental limitations identified using the psychiatric-review technique at issue here "do not necessarily indicate work-related functional limitations that must be present in the RFC assessment." *Wall v. Saul*, 2:20-CV-00460, 2021 WL 5225792, at *8 (S.D. W. Va. June 2, 2021), *adopted*, 2021 WL 5230989 (S.D. W. Va. Nov. 9, 2021). As

this Court has previously stated, "[w]hen, as here, an ALJ determines that mental impairments create only a mild limitation, the ALJ is perfectly justified in concluding that no related functional limitation belongs in the RFC finding." *Mosley v. Berryhill*, 2:17-cv-04197, 2018 WL 4781297, at *9 (S.D. W. Va. Sept. 5, 2018), *adopted*, 2018 WL 4781183 (Oct. 3, 2018). *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary."); *see Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003) ("[A]ll of the functions that the ALJ specifically addressed in the RFC were those in which he found a limitation, thus giving us some reason to believe that those functions that he omitted were those that were not limited.").

That is precisely what occurred in the matter *sub judice*. The ALJ explained at step two that Claimant's impairments of non-severe depression and anxiety did not result in work-related functional limitations and, using the record evidence, explained why Claimant did not require mental restrictions in order to work. (Tr. 138-141, 144-152). The ALJ explained that Claimant's primary-care provider and mental-health provider both documented mental-status examination findings that were normal overall. (Tr. 138, 897, 946, 975, 1111, 1165, 1398, 1401, 1450, 1453). Specifically, Claimant's mental-status examinations consistently indicated normal demeanor, interaction, speech, orientation, thought processes, memory, attention, fund of knowledge, insight, and judgment (Tr. 138, 897, 946, 975, 1111, 1165, 1398, 1401, 1450, 1453). The ALJ also highlighted that Claimant told her treating provider on several occasions that she was "doing well without significant affective symptoms" (Tr. 138, 880, 894, 964, 1184). Further, the ALJ

explained that for a significant portion of the relevant period, Claimant did not seek or receive any specialized mental health care (Tr. 138).

After discussing Claimant's mental health treatment history generally, the ALJ discussed the specific evidence related to her mental functioning in relation to the Listings (Tr. 138-41). First, in terms of Claimant's ability to understand, remember, and apply information, the ALJ explained that Claimant had no memory or cognitive deficits on examinations; she was able to remember and articulate her medical history to her providers; she participated at her disability hearing without any apparent difficulty; and she performed activities of daily living that "require a basic level of understanding, remembering, or applying information" such as reading, cooking, driving, shopping, and paying bills (Tr. 138-39, 523-25, 897, 946, 975, 1111, 1165, 1398, 1401, 1450, 1453).

In terms of Claimant's ability to interact with others, the ALJ explained that Claimant interacted normally with providers, displaying a cooperative, pleasant demeanor with appropriate eye contact and speech (Tr. 139, 897, 946, 975, 1111, 1165, 1398, 1401, 1450, 1453). She participated in her disability hearing without problems in social interaction (Tr. 138). She socialized with family members and shopped in public (Tr. 139, 525-26). She also reported no difficulty getting along with family, friends, neighbors, or authority figures on her paperwork (Tr. 139, 527-28).

In terms of Claimant's ability to concentrate and maintain persistence and pace, the ALJ explained that no provider observed that Claimant was distractible or slow (Tr. 139, 897, 946, 975, 1111, 1165, 1398, 1401, 1450, 1453). To the contrary, healthcare providers repeatedly documented that Claimant had an intact attention span (Tr. 139, 1111, 1398, 1401, 1450, 1453). Similarly, the ALJ observed that Claimant was "able to focus and participate in her disability hearing, which lasted approximately 45 minutes,

without any apparent difficulty" (Tr. 140). The ALJ also noted Claimant's activities of daily living that "require[d] some concentration and persistence," such as reading, watching television, driving, caring for herself, preparing meals, and performing light household chores (Tr. 140, 523-25).

In terms of adapting and managing herself, the ALJ explained that Claimant displayed appropriate appearance and judgment on examinations (Tr. 140, 897, 946, 975, 1111, 1165, 1398, 1401, 1450, 1453). Further, the ALJ discussed that she was capable of performing her own activities of daily living without any significant assistance, driving, completing errands in public, and attending regularly scheduled medical appointments (Tr. 140-41, 523-25). The ALJ explained that the opinion evidence further supported his RFC assessment (Tr. 151-52). As the ALJ detailed, the state agency experts found that Claimant's mental impairments were non-severe or, in other words, did not cause more than minimal limitations in her ability to perform basic mental work activities (Tr. 285-86, 335-36). The ALJ concluded that these prior determinations were persuasive, because they were consistent with the overall mental-health-treatment record showing adequate mental functioning on examinations; Claimant's reports to her provider that she was generally doing well without significant affective symptoms at several appointments; and Claimant's lack of specialized care for her mental impairments for a significant portion of the relevant period (Tr. 138, 151-52, 880, 894, 897, 946, 964, 975, 1111, 1165, 1184, 1398, 1401, 1450, 1453).

In light of the above outlined evidence, the ALJ reasonably found that Claimant did not require mental restrictions in order to work. The undersigned **FINDS** that the ALJ's conclusions are supported by substantial evidence, demonstrated by the ALJ's thorough analysis in which he explained his rationale.

Claimant does not challenge the ALJ's finding that her mental-health impairments were non-severe. (ECF No. 13 at 3-13.) Claimant's reply clarifies that she is contesting the fact that the ALJ made this analysis as part of his *step-two* discussion of the Listing requirements under the Agency regulations, because the mild limitations were not analyzed at step four in the RFC analysis. (ECF No. 17 at 1-2.) Claimant acknowledges, however, that the ALJ did note that the State Agency assigned mild limitations in the "paragraph B" findings and that he found that assessment persuasive.   ( Tr. 151-52.) However, Claimant argues that this is just a restatement of the mild limitations that the ALJ found at the second step, and provides no insight into how the ALJ accounted for mild limitations in the RFC; according to the Claimant, the Commissioner's argument conflates the "paragraph B" findings and the RFC assessment, despite the requirement of "a more detailed assessment beyond the general rating of four general areas of functioning" at step four. (ECF No. 17 at 2.)

Claimant's argument is not persuasive under the circumstances, because an ALJ's discussion at step two *can* be sufficient where, as here, the ALJ finds that the Claimant's mental-health impairments are non-severe and do not actually result in work-related functional limitations, *and* the ALJ's decision provides sufficient explanation and support for the determination, such that the Court can conduct a meaningful review. *See Ashby* v. Colvin, 2:14-cv-674, 2015 WL 1481625, at *3 (S.D. W. Va. Mar. 31, 2015) (citing *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015)). The Fourth Circuit explained that "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.*

As discussed *supra*, the ALJ *did* explain at step two why he found that Claimant had no more than "minimal" work-related limitations due to mental impairments, as well as his rationale; the ALJ's step-two analysis went beyond mere recitation of the four listing requirements and provided the analysis required of him, in "more detail." As this Court has observed, "an ALJ need not incorporate restrictions in the RFC to reflect a claimant's non-severe impairments when the ALJ reasonably determines such impairments do not actually result in work-related functional limitations." *Blevins v. Colvin*, Civ. 15-cv-14240, 2016 WL 6987169, at *15 (S.D. W. Va. Sept. 16, 2016), *adopted*, 2016 WL 6988502 (S.D. W. Va. Nov. 28, 2016); *See also Martin v. Saul*, Civ. No. 18-3172, 2020 WL 2813788, at *8 (D.S.C. Jan. 16, 2020) (noting that although some district courts in the Fourth Circuit have remanded for an ALJ's failure to account for mild limitations in the paragraph "B" criteria in the RFC finding, "most district court decisions have found to the contrary"), *adopted*, 2020 WL 1329395 (D.S.C. Mar. 23, 2020).

Accordingly, the undersigned **FINDS** that the ALJ's decision is supported by substantial evidence. Moreover, because the ALJ provided a logical bridge between the evidence and his conclusions, his decision does not create the problem identified by the Fourth Circuit in *Mascio* where inadequacies in the ALJ's analysis frustrated meaningful review.

Furthermore, even if the ALJ's RFC determination were insufficient, Claimant has nonetheless failed to demonstrate more than harmless error on the ALJ's part. *See Shinseki v.* Sanders, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination"). Notably, in support of her argument for remand, Claimant pointed to "the purported absence of an

explanation." *Morrison v. Berryhill*, No. 1:17-cv-00218, 2018 WL 4440715, at *6 (W.D.N.C. Sept. 17, 2018). Under the circumstances, further explanation by the ALJ is not required "absent some evidentiary showing by the claimant" that she cannot perform competitive work because of her particular deficits. *Grant v. Colvin*, No. 1:15-cv-00515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016). Claimant has not made that showing here; in fact, she does not identify with any specificity what mental limitations she claims were omitted from the RFC. (ECF No. 13 at 3-13). Thus, any perceived error is harmless. Accordingly, as the undersigned **FINDS** that the ALJ's decision is supported by substantial evidence, remand is unwarranted under the circumstances.

## IV.   CONCLUSION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Claimant's request to reverse the Commissioner's decision (ECF No. 16), **GRANT** the Commissioner's request to affirm her decision (ECF No. 17), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable David A. Faber, Senior United States District Judge. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown. Copies of any objections shall be served on opposing parties and provided to Judge Faber.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals. 28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

ENTER: August 31, 2023

Dwane L. Tinsley
United States Magistrate Judge